UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO. 06-11504-RCL

MICHAEL BLOUNT,

       Plaintiff

v.

TOWN OF STOUGHTON, MANUEL
CACHOPA, AND CHRISTOPHER CIAMPA,

      Defendants

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

I.      INTRODUCTION

In this action, the plaintiff, Michael Blount ("Blount"), a Lieutenant in the Police

Department for the Town of Stoughton ("Town"), alleges employment discrimination against the

Town, the Town's Police Chief, Manuel Cachopa ("Cachopa") and the Town's former Acting

Police Chief, Christopher Ciampa ("Ciampa").  Specifically, plaintiff alleges that he was

subjected to a series of adverse actions as a result of his failure to support Cachopa politically,

and his involvement in a grand jury investigation that led to Cachopa's indictment.  Plaintiff,

who is black, also alleges that these actions were motivated, in part, by his race.

Count I of the Complaint alleges a claim against the Town under the Massachusetts

Whistleblower Act, G.L. c.149, §185.  Counts II and III allege claims against Cachopa and

Ciampa, respectively, for violation of plaintiff's right of free speech, pursuant to 42 U.S.C.

§1983.  Counts IV through X allege claims of race discrimination and retaliation pursuant to

Title VII and G.L. c.151B, §4, as follows: Counts IV and V allege direct discrimination by the

Town; Count VI alleges a claim of aiding and abetting race discrimination by Cachopa, although,

as explained below, plaintiff actually claims direct discrimination by Cachopa; Count VII alleges

a claim for aiding and abetting race discrimination by Ciampa; Count VIII alleges that Ciampa retaliated against plaintiff for complaining about race discrimination; Counts IX and X allege that the Town retaliated against plaintiff for complaining about race discrimination.

The defendants move for summary judgment on Counts IV through X, on grounds that plaintiff has not produced evidence sufficient to establish triable issues as to whether any of the acts of which he complains were either: (1) motivated by a racial animus; or (2) causally connected to his complaints of alleged racial discrimination.

As further grounds for this motion, the defendants rely on the within Memorandum.

II.     STATEMENT OF FACTS

The facts underlying this case are set forth in the Defendants' Local Rule 56.1 Statement of Material Facts of Record, filed herewith.

III.    ARGUMENT

A.      Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter law." Fed.R.Civ.P. 56(c).  In this case, where the plaintiff has the burden of proof, the defendants are entitled to summary judgment if they either demonstrate that the plaintiff has no reasonable expectation of proving any essential element of his case due to insufficient evidence, or by submitting affirmative evidence negating an element of the plaintiff's claim.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1987); Fireman's Fund Ins. Co. v. Harley Realty Co., 24 F.Supp.2d 117, 118 (D.Mass. 1998).

In this case, plaintiff offers nothing more than his unsupported belief that the defendants took actions against him because of his race. Such unsupported, self-serving conclusions are insufficient to defeat summary judgment on plaintiff's Title VII and G.L. c.151B claims. See Arroyo-Audifred v. Verizon Wireless, Inc., 527 F.3d 215, 219-220 (1st Cir. 2008) (quoting Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir.1992)) (plaintiff may not defeat summary judgment "by citing an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus").

B.    Counts IV-VII: Plaintiff's Claims of Direct Discrimination and Aiding and Abetting Fail Because There is no Evidence of Racial Motive

Plaintiff's claims for direct racial discrimination, and aiding and abetting (Counts IV-VII), should be dismissed because plaintiff has not presented evidence that would allow a rational factfinder to conclude – or even infer – that any of the numerous actions of which plaintiff complains were motivated by a racial animus. In fact, the competent evidence demonstrates that the defendants were *not* motivated by racial animus in their conduct toward plaintiff.

Specifically, plaintiff asserts a series of allegedly harassing acts by defendants Cachopa and Ciampa,[1] many of which could not, standing alone, constitute "adverse action" sufficient to support a discrimination claim.[2] As such, although not explicitly stated in the Complaint, plaintiff appears to claim that he was subjected to a hostile work environment based upon his race. Under both Title VII and G.L. c.151B, proof of racial motive is an essential element of this claim. See, e.g., Douglas v. J.C. Penney Co., Inc., 474 F.3d 10, 15 (1st Cir. 2007) (to establish a

---

[1] Although the Complaint alleges that the Town's Board of Selectmen committed a racially adverse act, plaintiff has conceded that is not the case, as explained below.
[2] For example, plaintiff complains that Ciampa took away his access to Westlaw (though plaintiff does not actually know that he lost his Westlaw access); that Ciampa did not recognize a past incident which should have resulted in a commendation (though Ciampa awarded the commendation once plaintiff brought the incident to his attention); and that Ciampa did not respond to certain memos plaintiff wrote asking for clarification of orders. Statement, ¶¶25, 27.

racially hostile work environment, plaintiff must prove, among other things, that he was subjected to harassment *based upon his race* (emphasis added)); Danco, Inc. v. Wal-Mart Stores, Inc., 178 F.3d 8, 16 (1st Cir. 1999) (to make out racially hostile work environment claim, plaintiff must show, among other things, that he "was exposed to comments, jokes, or acts of a racial nature by the defendant's employees").  Even if plaintiff were to allege that some of the acts of which he complains are sufficient, standing alone, to constitute actionable adverse job actions, he still must show that each such act was motivated by a racial animus.  See, e.g., Lattimore v. Polaroid Corp., 99 F.3d 456, 467 (1st Cir. 1996) ("Title VII requires proof of something more than pretext.  It also requires proof of discriminatory intent"); Thompson v. Coca-Cola Co., 522 F.3d 168, 176 (1st Cir. 2008) (*prima facie* case of discrimination under c.151B requires, *inter alia*, that employer "harbored discriminatory animus, which was the determinative cause of the adverse action").  As explained below, whether plaintiff's claims are analyzed under the rubric of a hostile work environment, or as separate, discrete adverse actions, plaintiff has not presented any competent evidence that Cachopa bore any racial animus towards him, and he has explicitly conceded that Ciampa bore no such animus.  Moreover, plaintiff has offered no evidence of a racial bias on the part of the Selectmen.  As such, plaintiff fails to meet his burden under Celotex Corp., supra, and summary judgment should enter for defendants on Counts IV through VII on this basis alone.[3]

---

[3] While the courts often employ the familiar tri-partite burden-shifting analysis enunciated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S.Ct. 1817 (1973) and adopted in Wheelock College v. MCAD, 371 Mass. 130 (1976), when addressing motions for summary judgment, the defendants submit that such an analysis is not necessary in this case, due to the absolute dearth of any competent evidence of racial or retaliatory motive on the part of any of the defendants.

1.    Counts IV-V: Plaintiff Concedes that the Board of Selectmen Did Not
      Discriminate Against Him

Counts IV and V of the Complaint assert that the Town directly discriminated against

plaintiff on the basis of race by not promoting him.  Complaint, ¶¶39, 41.  Assumedly, this

allegation refers to the decision of the Town's Board of Selectmen to not promote plaintiff to the

Police Chief's position in October, 2004.[4]  Statement, ¶20.  However, plaintiff explicitly stated

that he does not consider the Board's decision in this regard to be racially motivated.  Id.  As

such, the only potential basis for liability against the Town for discrimination would be

vicarious, through the actions of Cachopa and/or Ciampa.  As neither of these individuals

discriminated against plaintiff, for the reasons explained below, Counts IV and V should be

dismissed.

2.    Count VI: Plaintiff Has Presented No Evidence of Racial Motive By Cachopa

While Count VI of the Complaint alleges that Cachopa "aided, abetted, compelled or

coerced acts" of racial discrimination, plaintiff's claims against Cachopa are, in actuality, ones of

direct racial discrimination.  Statement, ¶35.  As purported evidence of a racial animus by

Cachopa, plaintiff proffers a single comment Cachopa made to him in September, 2002.

Plaintiff cannot, in fact, recall the specific comment, only that it "referenced" plaintiff and a

black computer, and that plaintiff considered the comment racially motivated.  Statement, ¶5.

Defendants submit, first, that this single stray remark – even assuming that it was racial in

nature, despite plaintiff's failure to recollect it – is insufficient to comprise evidence of racial

animus.  See Ruiz Rivera v. Pfizer Pharmaceuticals, LLC, 521 F.3d 76, 87 (1st Cir. 2008)

(allegedly discriminatory statement by employer "amounts to little more than a stray remark, one

---

[4] The Selectmen do not have authority over the day-to-day operations of the Police Department.  Nor has it been
alleged that any of the selectmen took specific actions against the plaintiff, such as discipline, which only the Chief
(or Town Manager, who is the appointing authority for all positions other than the Chief) could impose.

which standing alone is insufficient to defeat summary judgment"). Moreover, by plaintiff's estimate, this comment was made more than *two years* prior to when plaintiff claims the alleged harassment began, in late 2004. Statement, ¶23. As such, the alleged comment is too remote from the alleged harassment to provide evidence of a racial motive. See McMillan v. MSPCA, 140 F.3d 288, 301 (1st Cir. 1998) (probative value of stray remarks "is circumscribed if they were made in a situation temporally remote from the date of the employment decision"); see also Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 n.6 (1st Cir. 2000) (noting "circumscribed" evidentiary weight of "temporally remote" statements). Finally, this comment is wholly unrelated to any of the adverse actions alleged by plaintiff, further detracting from its probative value. See McMillan, 140 F.3d at 301 (probative value of stray remarks "is circumscribed … if they were not related to the employment decision in question").

Plaintiff also attempts to establish the requisite racial animus by speculating that Cachopa assigned him the investigation of the Hills complaint, "rather than one of the two more senior white lieutenants … because [plaintiff] is black." Complaint, ¶10. Plaintiff admits he cannot identify any statement or act by Cachopa to support this contention; rather, he merely presumes that "because I'm black, he pre-judged my ability, and that I would be amenable to carrying out his wishes regardless of the ramifications." Statement, ¶7. This presumption, however, is wholly refuted by evidence that, in fact, Cachopa *did* attempt to assign the Hills complaint to the other two white lieutenants prior to assigning it to plaintiff. Indeed, plaintiff concedes that Lieutenant Francis Wohglemuth would not conduct the investigation because the officer who was the subject of the complaint (who was also a lawyer) had performed personal legal work for Wohgemuth, thus creating a conflict. Statement, ¶9. Cachopa then assigned the other white Lieutenant, David Chamberlin, to investigate the matter. However, according to Chamberlin

6

himself, he "put the complaint aside" and had taken no action on it as of the time Cachopa transferred the matter to Blount.  Statement, ¶8.

Plaintiff's contention that the Hills complaint was assigned to him because he is black is even more untenable given that, at the time he was assigned the complaint, part of his regular job duties as Lieutenant was to conduct internal investigations.  Plaintiff himself concedes that "it does make sense" that Cachopa assigned an internal investigation to the officer in charge of conducting internal investigations.  Statement, ¶10.

Plaintiff also concedes that, other than the comment that he does not recall and the fact that he was assigned the Hills investigation, he has not seen or heard anything from Cachopa that would indicate a racial bias.[5]  Statement, ¶36.  On this record, it would be impossible for a reasonable factfinder to infer that Cachopa's actions were motivated by plaintiff's race.  Indeed, plaintiff himself proffers an alternative theory for Cachopa's actions: that they were the result of his failure to support Cachopa politically, and his involvement in a grand jury investigation that led to Cachopa's indictment.  See Complaint, ¶¶20, 27 and Counts I-III.  This further highlights the tenuousness of his theory that Cachopa was motivated by racial bias.

As plaintiff offers insufficient evidence to establish that Cachopa's actions toward him were based upon race, plaintiff fails to meet his burden under Celotex Corp. of establishing an essential element of his case.  Accordingly, summary judgment should enter on Count VI of the Complaint, alleging racial discrimination by Cachopa, on this basis alone.

---

[5] Plaintiff testified at deposition that another officer allegedly told him that Cachopa "made some sort of reference to black people and monkeys," and that a third officer told him that "he grew up with [Cachopa] and he was one of the biggest racists in the school against black people."  Both of these statements comprise hearsay.  In addition, the latter statement consists entirely of one individual's opinion, unsupported by any facts.  As such, these alleged statements are inadmissible and therefore are not competent evidence of any racial animus on Cachopa's part, and do not suffice to defeat summary judgment.

3. <u>Count VII: Plaintiff Has Presented No Evidence of Racial Motive By Ciampa</u>

Count VII of the Complaint alleges that Ciampa aided and abetted acts of racial discrimination, a claim which is recoverable under G.L. c.151B, §4(5).  At deposition, plaintiff specified that he alleges that Ciampa aided and abetted Cachopa in his acts of racial discrimination.  <u>Statement</u>, ¶37.

As an initial matter, plaintiff's claim for aiding and abetting against Ciampa fails because, as explained above, he cannot establish his claim of racial discrimination against Cachopa.  <u>See</u> <u>Ligenza</u> v. <u>Genesis Health Ventures of Mass., Inc.</u>, 995 F.Supp. 226, 233 (D.Mass.1998) ("[a]bsent any discrimination or retaliation by [the defendant employer], the individual defendants cannot be responsible … for aiding and abetting unlawful discrimination that simply did not exist"); <u>Abramian</u> v. <u>President & Fellows of Harvard Coll.</u>, 432 Mass. 107, 122 (2000) (aiding and abetting claim entirely derivative of underlying discrimination claim).

In any event, plaintiff's claim for aiding and abetting fails for the same reason his underlying claim for discrimination fails: a lack of evidence of racial animus.  As with a claim for direct discrimination, a claim of aiding and abetting under G.L. c.151B, §4(5) requires evidence that racial animus motivated the defendant's actions.  <u>See</u> <u>Beaupre</u> v. <u>Cliff Smith Assoc.</u>, 50 Mass.App.Ct. 480, 495 n.23 (2000) (to be liable for aiding and abetting, a defendant "must … be found to have had the requisite intent to discriminate").

Here, plaintiff explicitly concedes that Ciampa has never demonstrated any racial bias.  <u>Statement</u>, ¶37.  As such, plaintiff again fails to meet his burden under <u>Celotex Corp.</u> of establishing an essential element of his case, and Count VII of the Complaint should be dismissed on this basis alone.

4.   Affirmative Evidence Negates the Essential Element of Racial Motive, as Similarly
Situated White Officers Were Treated Similarly to Plaintiff

Summary judgment is further appropriate on plaintiff's claims of racial discrimination,

because there is affirmative evidence negating the essential element of a racial motive on the part

of the defendants.  See Fireman's Fund Ins. Co., 24 F.Supp.2d at 118.  That is: other, white

officers who are similarly situated to plaintiff have alleged claims of wrongful conduct by

Cachopa and Ciampa, in some instances nearly identical to that alleged by plaintiff, and

premised upon the same non-racial motive as is also claimed by plaintiff.  See Garcia v. Bristol-

Myers Squibb Co., 535 F.3d 23, 31 (1st Cir. 2008) ("[t]o successfully allege disparate treatment

[under Title VII], a plaintiff must show 'that others similarly situated to him in all relevant

respects were treated differently by the employer' "); Matthews v. Ocean Spray Cranberries,

Inc., 426 Mass. 122, 129 (1997) ("in order to establish that the defendant's stated reasons for

terminating him were a pretext [under c.151B], the plaintiff must "identify and relate specific

instances where persons similarly situated in all relevant aspects were treated differently").

Specifically, shortly after plaintiff filed this action, the two other Lieutenants in the

Stoughton Police Department, Wohlgemuth and Chamberlin (collectively, the "Lieutenants") –

who are both white and senior to plaintiff – filed their own suit alleging that they had been

harassed by Ciampa and Cachopa.  Statement, ¶38.  The Lieutenants alleged that Cachopa and

Ciampa harassed them in ways significantly similar to plaintiff's claims of harassment here.  For

example, like the plaintiff, the Lieutenants also alleged that Cachopa and/or Ciampa essentially

demoted them by elevating Ciampa to the No. 2 position in the Department over them; changed

their shifts, offices, and training locations; changed the locks in the police station and did not

provide them with keys; required them to undergo unnecessary training; unfairly reprimanded

them; changed their assignments; and circulated two no-confidence petitions against them.
Chamberlin further alleged that the Town wrongfully filed its own suit against him.  Id., ¶39.
And like the plaintiff here, the Lieutenants also alleged that these actions were retaliation for
their failure to support Cachopa politically, and their involvement with a grand jury investigation
that led to Cachopa's indictment.  Id., ¶40.[6]

Similarly, a white Sergeant in the Police Department, Robert Welch, also filed suit
against Ciampa and Cachopa, alleging that Ciampa failed to re-appoint him to a specialist
position in retaliation for his failure to support Cachopa politically, and his involvement in the
grand jury proceedings.  Statement, ¶41.[7]

While some of the conduct alleged by the other white officers is not identical to that
claimed by the plaintiff in this case, Wohlgemuth, Chamberlin, Welch and plaintiff all claim that
they suffered adverse actions due to a retaliatory motive based on essentially political – and not
racial – bias.  Moreover, this alleged political bias is attributed to the exact same set of facts:
namely, the recall campaign in 2004, and the grand jury investigation that led to the indictment
of Cachopa.  The fact that three white officers allege the same or similar wrongs by the
defendants as does plaintiff not only eviscerates plaintiff's ability to establish that he was treated
differently because of his race, it establishes that plaintiff's race was *not* a factor in Ciampa or
Cachopa's actions toward him.  As such, Counts VI and VII, alleging race discrimination by
Ciampa and Cachopa, should be dismissed on this additional basis.

---

[6] In February, 2008, the Lieutenants' suit went to trial, at the conclusion of which the Court granted a Directed
Verdict as to all claims against Ciampa, the Selectmen and the Town.  A mistrial had been declared on plaintiffs'
claims against Cachopa, and these claims were retried in March, 2008, with the jury returning a verdict in favor of
Cachopa.  The Lieutenants have appealed both the Directed Verdict and the jury verdict.  Statement, ¶40, n.5.
[7] Welch's claims against Cachopa were dismissed upon summary judgment.  A trial on Welch's claims against
Ciampa was scheduled to begin on January 21, 2009.  Statement, ¶41, n.6.

B.     Counts VIII-X: Plaintiff's Retaliation Claims Fail Because There is No
       Evidence of a Causal Connection to Plaintiff's Protected Activity

Count VIII of the Complaint alleges that Ciampa retaliated against plaintiff because he complained of racial discrimination, in violation of G.L. c.151B, §4.  Counts IX and X make the same claims, under G.L. c.151B and Title VII, against the Board of Selectmen.

To establish a *prima facie* case of retaliation under Title VII or G.L. c.151B, the plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action.  Enica v. Principi, 544 F.3d 328, 343 (1st Cir. 2008) (Title VII); Thompson, 522 F.3d at 181 (G.L. c.151B).  For a retaliation claim to "survive a motion for summary judgment, the plaintiff must point to evidence in the record that would permit a rational factfinder to conclude that the employment action was retaliatory."  Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 57 (1st Cir. 2000); Noviello, 398 F.3d at 93 ("[i]t is only those actions … that stem from a retaliatory animus which may be factored into the hostile work environment calculus").  "It is insufficient for one to simply recount that one complained and was disciplined."  Santiago-Ramos, 217 F.3d at 57-58 (evidence insufficient to warrant inference that plaintiff's termination was in retaliation for her opposition to proposed discriminatory policy, where evidence merely showed that manager proposed the policy, plaintiff told him of her opposition, and plaintiff was later fired).

Here, plaintiff complained of racial discrimination in two ways: First, he wrote a letter to Ciampa on July 14, 2005, in which he complained that he had been mistreated because, he believed, he had cooperated with the grand jury investigation, *and* because of his race.  Statement, ¶28.  The July 14 letter stated that plaintiff intended to file a complaint at the MCAD

for racial discrimination, and in fact included a draft copy of the putative MCAD complaint. <u>Id.</u>
Second, on July 27, 2005, plaintiff filed his complaint with the MCAD. <u>Id</u>, ¶30. Defendants do
not dispute that the MCAD filing is protected activity, and assume for purposes of summary
judgment that the July 14, 2005 letter to Ciampa constitutes protected activity as well.

      1.    <u>Count VIII: Plaintiff's Retaliation Claim Against Ciampa</u>

Plaintiff explicitly concedes that he "ha[s] no evidence to prove" that any of Ciampa's
allegedly wrongful conduct occurred as a result of the July 14 letter – and by extension, the filing
of the MCAD complaint. <u>Statement</u>, ¶31. This alone is sufficient to warrant summary judgment
on plaintiff's retaliation claim.

Even apart from plaintiff's admission, there simply is no evidence that Ciampa's conduct
was in retaliation for the July 14 letter or the MCAD complaint. Plaintiff cannot, for instance,
point to any statement by Ciampa tying any of his actions to plaintiff's complaints; indeed,
Ciampa did not even respond to the July 14 letter. <u>Statement</u>, ¶29. <u>Contrast</u> <u>Philip</u> v. <u>Cronin</u>,
537 F.3d 26, 33 (1st Cir. 2008) (letters written by plaintiff criticizing employer were discussed at
meeting where decision to terminate plaintiff was made, and termination letter referred to
plaintiff's "conduct" on or about the dates letters were written). Nor does the alleged harassment
itself appear linked to plaintiff's complaints of racial discrimination. <u>Contrast</u> <u>Noviello</u> v. <u>City
of Boston</u>, 398 F.3d 76, 86 (1st Cir. 2005) (harassment linked to plaintiff's complaint which
resulted in supervisor's termination: coworkers referred to plaintiff as "rat;" lamented the firing
of their "good supervisor;" and took up a collection for supervisor in plaintiff's presence). Nor
does plaintiff offer any other evidence – competent or not – through which one could infer a
retaliatory motive.

Indeed, the evidence affirmatively refutes any alleged link between Ciampa's actions and plaintiff's complaints, as many of these actions occurred between December, 2004 and May, 2005 – months *before* plaintiff wrote his letter and filed his MCAD complaint in July, 2005. These actions occurring before July, 2005 include: removal of plaintiff's computer and his Westlaw access; reprimands for a disparaging remark to another officer and for being late to training; changing his training location; preparing an allegedly deficient report regarding Cachopa'a alleged assault with the SUV; refusing to give plaintiff keys to new locks in the police station; questioning plaintiff about leaving a prisoner unguarded at the hospital; ignoring a memo plaintiff wrote seeking clarification of an order; relieving plaintiff of his accident reconstruction duties; failing to recognize a past incident which should have resulted in a commendation; and appointing another individual as Executive Officer instead of plaintiff. Statement, ¶¶25, 27. The fact that Ciampa's harassment allegedly *continued* after plaintiff complained of racial discrimination does not create an inference that the two were linked. Contrast Noviello, 398 F.3d at 86 (timing of harassment suggested retaliation where it began soon after plaintiff lodged complaint against supervisor, and surfaced most frequently in the first few months after supervisor was fired); Philip, 537 F.3d at 33 (plaintiff fired days after he publicly criticized agency). As there is no evidence linking the alleged adverse action by Ciampa to plaintiff's complaints of racial discrimination, Count VIII of the Complaint, alleging that Ciampa retaliated against plaintiff, should be dismissed.

   2.    Count IX-X: Plaintiff's Retaliation Claims Against the Town

Similarly, Counts IX and X of the Complaint, alleging retaliation by the Town of Stoughton should be dismissed. The only conceivable adverse action that the Town – through its Board of Selectmen – may have taken against plaintiff was the Board's decision not to promote

him to Police Chief.  Complaint, ¶23.  Indeed, plaintiff explicitly stated that he does not allege

retaliation by anyone other than Cachopa and Ciampa.  Statement, ¶34.  However, this decision

was made in October, 2004, long before plaintiff first complained of racial discrimination in

July, 2005.  Statement, ¶20.  As such, plaintiff cannot prove that the decision was based on his

complaints,[8] and Counts IX and X should therefore be dismissed.

IV.    CONCLUSION

      WHEREFORE, for the foregoing reasons, the defendants request that summary judgment

enter in their favor on Counts IV through X of the Complaint, alleging racial discrimination.

DEFENDANT,                                        DEFENDANTS,

TOWN OF STOUGHTON,                                MANUEL CACHOPA AND
                                                  CHRISTOPHER CIAMPA,

By its attorneys,                                 By their attorney,

/s/Jackie Cowin_____                   /s/Stephen C. Pfaff_____
Michele E. Randazzo (BBO# 564906)                 Stephen C. Pfaff, Esq.
Jackie Cowin (BBO# 655880)                        Merrick, Louison & Costello, LLP
Kopelman and Paige, P.C.                          67 Batterymarch Street
101 Arch Street                                   Boston, MA 02110
Boston, MA  02110-1109                            (617) 439-0305
(617) 556-0007

363796/METG/0641

---

[8] To the extent that plaintiff may argue that the Town is responsible for the alleged retaliatory actions of Ciampa, such a claim would fail since, as described above, plaintiff has not provided sufficient evidence to establish retaliation by Ciampa.