UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION No. 06-11504RCL

_____
MICHAEL BLOUNT,                       )
    Plaintiff                         )
v.                                    )
                                      )
TOWN OF STOUGHTON, MANUEL CACHOPA     )
and CHRISTOPHER CIAMPA, Individually and in )
His Official Capacity,                )
    Defendants..                      )
_____)

PLAINTIFF'S L.R 56.1 STATEMENT OF MATERIAL FACTS

1.   Michael Blount ("Blount") has been a police officer in the Stoughton Police Department for more than twenty years.  Blount started out as a patrolman and about seven years later became a sergeant after taking a qualifying promotional examination.  In 2002, Blount became the first black lieutenant in the Stoughton police department through another promotional exam.  During the more than twenty years that Blount has been on the force, Blount has been the only black superior officer in a department consisting of about 60 officers.  Blount has a Bachelors Degree in Law Enforcement and a Masters Degree in Criminal Justice. Blount Aff.2/4/09 p.1.

2.   When Blount was assigned to conduct an investigation into Timothy Hills' complaint about Sgt. David Cohen ("Cohen"), Blount kept Chief Manuel Cachopa ("Cachopa") apprised of the facts that were coming to light.  Whenever Blount informed Cachopa of facts that appeared to support Hills' complaint, Cachopa would ask him questions such as, "Why are you digging so deep?"  Cachopa would also say things to him like: "You're trying to f___ the officer. You've got nothing.  You've got no witnesses."  When Blount asked Cachopa for permission to talk to

the district attorney and to subpoena phone records relevant to the investigation, Cachopa denied those requests.  It became clear to him that Cachopa wanted him to bury the complaint. However, the facts Blount uncovered would not support such action.  Cachopa told him to write up a report.  In January 2003, Blount started a report about the investigation noting that David Cohen had made inaccurate and inconsistent statements concerning the matter.   The report was finalized in March 2003.  On February 4, 2003, during the time period that Blount was writing up the report, Cachopa made the racial remark concerning the computer, and when Blount objected to the discriminatory remark, Cachopa angrily followed Blount into the men's room.  Cachopa was beet red in the face, and screaming at Blount.  Cachopa came up very close to Blount, raising his arms and Blount thought Cachopa was going to hit him. Ultimately in his report, Blount recommended that all charges against Timothy Hills be dropped and his record expunged.  The District Attorney dropped charges against Hills. Blount Aff.2/4/09 p.1-2.

3.      In July of 2004 when Cachopa's contract as Chief was not renewed, Lieut. David Chamberlin ("Chamberlin")was appointed to serve as Interim Chief while a search was conducted to hire a permanent replacement for Cachopa. During the time that Chamberlin served as acting chief, Blount functioned as the second in command of the department. His job title was "Administrative Lieutenant."  Blount applied for the position of Chief and was one of the three finalists for the position. Sgt. Christopher Ciampa ("Ciampa") also applied for the position, but was not one of the finalists. Blount Aff.2/4/09 p.2.

4.      In the time period prior to the recall election of November 2004, several officers who were involved in the incidents being investigated by the Special Prosecutor were put on administrative leave. The officers who were put on administrative leave included Cohen and

Cachopa. The recall election in November 2004 was successful, and Cachopa supporters gained control of the board of selectmen. With the new board of selectmen in place, the Town of Stoughton ("Stoughton") decided to reinstate Cachopa as Chief and the other officers who had been placed on leave. Almost immediately after his reinstatement, Cachopa issued orders that: 1) directing that Blount move out of the office that Blount occupied; 2) assigning Blount to the "graveyard" shift of 12pm to 8am; 3) appointing Ciampa as the deputy chief – the position's title later changed to Executive Officer – as supervisor over Blount and the other lieutenants in the department. Blount's duties were changed including being assigned as shift supervisor of the "graveyard' shift, being stripped of authority as Internal Affairs investigator, and replaced with the unpopular responsibility of scheduling and billing details. Blount was removed from his position as second in command and replaced with Ciampa who was only a sergeant. Later on Blount was also stripped of his responsibilites as department accident investigator. Blount Aff.2/4/09 p.2-3.

5.  In separate letters written in December 2004 Chamberlin, Lieut. Wohlgemuth, and Blount complained about the hostile working environment that had been imposed on them after Cachopa was reinstated as Chief. Stoughton hired an attorney, Mark L. Terry of the law firm Mirick, O'Connell, DeMaillie & Lougee, LLP, to conduct an investigation into our allegations. Blount was interviewed by Terry on or about February 3, 2005. During that interview, Blount told him that Blount believed that one of the reasons for the adverse treatment that he was subjected to was his race and that discrimination was a factor in that treatment. Blount Aff.2/4/09 p.3.

6.  In the past under Chief Cachopa, Blount has participated in and supervised community

policing programs similar to the ones currently in use by Stoughton. The Stoughton Police department has for many years received grants that pay for activities associated with community policing ideals. Police officers taking part in the community policing program are paid overtime from grant proceeds and/or receive compensatory time off whenever they participate in these activities. Only officers designated as community policing officers are allowed to participate in such programs. There are designated community policing officers on all three shifts. Currently, three patrol officers and one sergeant on the midnight to eight shift are community policing officers. An additional sergeant and one patrol officer took part in the program when they were members of the 12 – 8 shift but now participate as members of both the 8 – 4 and 4 – 12 shift respectively. Blount is aware of community policing activities such as an open gym which is a recreational activity supervised by a community policing officer that generally takes place after 4:00 P.M. daily during the week. Also, mountain bike patrols that are scheduled and do in fact take place after 4:00 P.M. during the warm weather months. There are also community policing activities that do not take place within the usual Monday through Friday time frame such as infant car seat installations that generally take place on weekends. Blount expressed an interest in participating in the current program sometime in 2007 to Lieut. Devine, but Blount's interest was met with a hostile response and Blount never received any feedback. So, Blount abandoned his efforts. Blount Aff.2/4/09 p.3-4.

7.   Prior to the reinstatement of Cachopa, Blount had never had any disciplinary action taken against him. After Cachopa was reinstated and Ciampa became Executive Officer and later acting Chief, there were many meritless attempts to discipline or fire Blount. On each occasion when the facts underlying the attempts to discipline him were either reviewed by or grieved to a party

outside of the police department, the Town Manager, they were not supported. Blount Aff.2/4/09 p.4.

8.     Apart from the computer comment, on more than one occasion, Cachopa has expressed bias against black people.  Dating as far back as when he was in high school, Cachopa expressed a dislike of black people. Joseph Pasquarelli has known Cachopa for over 30 years. He went to high school with him, played sports with him, worked out with him, socialized with him, and worked with him at the police department for over 20 years. Cachopa used to comment to Joseph Pasquarelli that one of the reasons he hated basketball was because he could not understand why anyone would want to watch black players running up and down the court. On another occasion, Cachopa was on the verge of tears complaining that he had a hard time getting over the fact that his wife, Arlene, had formerly dated a black man. On yet another occasion, after viewing body-building photographs of Kenny Allen, a black Stoughton police officer, Cachopa commented that Allen was a "monkey."   Pascarelli Aff. 2/4/09 p. 1-2.  Pascarelli thought there was merit to Blount's complaint of a racial discrimination and credited his version of the SUV incident. Pascarelli Dep. 7/28/06 Mini p.8.

9.     Cachopa in his interview with Mark Terry ("Terry") that occurred on 3/17/05  reported to Terry that the gist of his comment was that it was suitable that Blount was getting a black computer since he was black while all the other computers in the Stoughton Police Department were white.  Cachopa Trans. P. 12.  Terry had been hired by Stoughton to investigate the complaints of their being a hostile work environment that have been launched by Blount and the other two lieutenants in December of 2004.   In February and March 2005, Terry interviewed Stoughton police officers and other individuals.  At the beginning of each interview ,Terry

advised the witness that his law firm had been retained for the purpose of investigating the allegations of the lieutenants. Terry Report p. 1-2. Terry first interviewed the three lieutenants. Terry Dep.7/28/06 Mini p.6. According to Terry, Cachopa knew the sources of the complaints that were the topics of the interview, and Terry questioned Ciampa about some of the specific allegations. Terry Dep.7/28/06 Mini p 11.

10. During Terry's interview with Blount, while Blount acknowledged that he believed that some of the adverse actions that have been taken against him were because he had participated in the grand jury proceedings and opposed the reinstatement of Cachopa, he said he also thought there was a racial element to the actions taken against him. Terry Report p. 7-9  Shortly after Blount complained to Terry of racial discrimination, Terry reported to the town manager about the discrimination complaint. Terry Depos. 7/28/06 Mini p.10.

11. Within a month and a half after Blount made a complaint of racial discrimination to Terry, an attempt was made to have him terminated. Ciampa Memo 3/16/05.

12. In December of 2004, while all three lieutenants initially were ordered to move out of their office and change their shifts, Blount was the only individual permanently affected. Chamberlain was on sick leave and never moved. Wohlgemuth never moved. Blount Depos.9/22/08 Mini p. 31-32.

13. Ciampa had a rank of sergeant and, has a Bachelors Degree in Law-enforcement and a JD. Ciampa has claimed that he did not like what Cachopa did to the lieutenants in December of 2004. Ciampa Dep. 3/9/06 Mini p.3,22.   Ciampa claims that prior to the recall election Cachopa talk to him about making him second in command of the police department. Ciampa Dep. 7/29/08 Mini p. 17 Ciampa capped Blount on the graveyard shift even after Lieut. Devine was

promoted purportedly because Devine was involved with community policing. Ciampa Dep. 7/29/08 Mini p. 24.  Ciampa had never done an internal investigation prior to December of 2004. Ciampa Dep. 7/29/08 Mini p. 26.  Ciampa attempted to terminate Blount on two occasions and attempted to have him suspended on at least one occasion.. Ciampa Dep. 7/29/08 Mini p. 29,32. Ciampa also gave Blount written warnings on at least a couple of occasions. Ciampa Dep. 7/29/08 Mini p. 33.  When Cachopa was indicted in March of 2005, Ciampa gave an interview to the Boston Globe where he stated, "I'm just keeping the seat warm." Boston Globe, 3/20/05.

14. Until the spring of 2005, Thomas Murphy had the rank of sergeant and a Bachelors Degree in Criminal Justice.. Murphy Dep. 7/30/08 Mini p.3.

15. Cachopa takes the position that he did not have any conversations with Ciampa about the management of the Police Department prior to June of 2004 when his contract as chief was not renewed. He has stated that he first talked to Ciampa about assuming the position of second in command when he was reinstated as chief in November or December of 2004.  It is Cachopa's belief that he posted the position of Deputy Chief/Executive Officer on a clipboard in the control room so that people could apply for the position in December of 2004. Cachopa Dep. 10/7/08 p. 6, 12-13.  Cachopa was ultimately convicted on January 23, 2009 on the indictment that was

handed up in March of 2005. He is scheduled for sentencing in February 2009. Boston Globe, 2/3/09.

                                                Respectfully submitted,
                                                Plaintiff
                                                Michael Blount
                                                By his attorney,

                                                _S/_____Leslie B. Greer_____
                                                Leslie B. Greer
                                                875 Massachusetts Avenue - Ste. 31-33
                                                Cambridge, MA 02139
                                                (617) 354- 8375
                                                BBO# 210700

Dated: February 4, 2009